UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


KEITH LEE BOYD,

        Petitioner,

                                                        CASE NO. 4:05-CV-40169
v.                                                  HONORABLE PAUL V. GADOLA

RAYMOND D. BOOKER,

        Respondent.
_____/

## OPINION AND ORDER DENYING HABEAS CORPUS PETITION

Petitioner Keith Lee Boyd has filed a *pro se* application for the writ of habeas corpus under 28 U.S.C. § 2254. The habeas petition challenges Petitioner's state conviction for aggravated stalking. Because the Court finds no merit in the grounds for relief, the habeas petition will be denied.

**I. Background**

The facts leading to the charge against Petitioner have been summarized by the Michigan Court of Appeals as follows:

> Yvonne Stephens, the complainant in this case, testified that defendant repeatedly called and threatened her and her family over a period of time. Ms. Stephens' daughter, Kimberly Harris, at one time was defendant's girlfriend and gave birth to defendant's son. Shortly after the birth of their son, Ms. Harris took the child and moved back to her mother's house. Ms. Stephens claimed that while Ms. Harris was living in her home, defendant called excessively and threatened to kill them if he could not visit his child. Between June 9, 2000 and June 20, 2000, phone records revealed that 156 phone calls were made from defendant's home address to Ms. Stephens' home. Ms. Stephens estimated that defendant called between twenty to forty times a day.
>
> On June 20, 2000, Ms. Stephens called the police after a window was

broken in her home and she heard defendant making threats outside. While the police were at Ms. Stephens' home, defendant called several times and made threats towards Ms. Stephens and her family. Officer William Ross testified that he spoke on the phone with an individual who identified himself as Keith. During this conversation, Officer Ross stated that when he told Keith to stop calling[,] Keith responded that the police could not be there all the time. The police officers testified that Ms. Stephens appeared scared and upset on the night of this incident. Shortly thereafter, Ms. Harris and the baby moved to a domestic violence shelter. Ms. Stephens testified that defendant continued to make threatening phone calls even after Ms. Harris left her home.

*People v. McCoy*, No. 234685, at 1 (Mich. Ct. App. Nov. 22, 2002).

On March 29, 2001, a Macomb County Circuit Court jury found Petitioner guilty, as charged, of aggravated stalking, MCL § 750.411i. The trial court sentenced Petitioner to imprisonment for fifteen to thirty years as a habitual offender. The Michigan Court of Appeals affirmed Petitioner's conviction in an unpublished *per curiam* opinion, *see McCoy*, No. 234685 (Mich. Ct. App. Nov. 22, 2002), and on May 30, 2003, the Michigan Supreme Court denied leave to appeal. *See People v. Boyd*, 468 Mich. 915; 662 N.W.2d 751(2003) (table).

Petitioner filed his habeas corpus petition on May 25, 2005. The grounds for relief and supporting facts read:

> I. Petitioner was denied the effective assistance of counsel.
>
> Petitioner was denied the effective assistance of trial counsel through counsel's neglectful failure to secure and present a) the medical records of Ms. Harris concerning her drug abuse; and b) the records keeper of the jail visit log to impeach the testimony of Ms. Harris, a key prosecution witness.
>
> II. The trial court's refusal to allow a continuance denied the Petitioner the right to present a defense and fair trial.
>
> The trial court's refusal to allow an overnight continuance to enable defense counsel to secure the attendance of the keeper of the jail visitation records so as to impeach the credibility of the key prosecution witness was an abuse of discretion which denied the

>        Petitioner the right to present a defense and a fair trial.
>
> III.   Petitioner was denied a fair trial through prosecutorial misconduct.
>
>        The petitioner was denied a fair trial through the prosecutor's a) improper appeal to the jury's sense of civic duty and fear of crime and b) denigrating defense.
>
> IV.    The trial court's decision to allow other bad acts evidence denied the petitioner a fair trial.
>
>        The trial court's decision to allow other bad acts evidence in the form of an unrelated incident occurring in Wayne County seven months after the instant offense and directed towards a different complaining witness was an abuse of discretion which denied Mr. Boyd his state and federal constitutional rights to a fair trial.

Respondent filed an answer to the habeas petition urging the Court to deny the habeas petition because Petitioner's claims are not cognizable on habeas review, are procedurally defaulted, or lack merit. Respondent has assumed that the habeas petition is timely, and the Court is not obliged to consider *sua sponte* whether Petitioner complied with the one-year statute of limitations. *Day v. McDonough*, 547 U.S. 198, __, 126 S. Ct. 1675, 1684 (2006).

## II. Standard of Review

The Court may grant the writ of habeas corpus only if the state court's adjudication of the claims on their merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court

arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (Justice O'Connor's majority opinion on Part II). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id*. at 410 (emphasis in original). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409.

## III. Discussion

### A. Trial Counsel

Petitioner alleges that he was denied the effective assistance of trial counsel when counsel failed to secure and present (1) medical records documenting Kimberly Harris' drug abuse and (2) the keeper of a jail visitation log, which allegedly demonstrated that Harris visited Petitioner several times while he was confined in jail. Petitioner claims that the medical information and testimony from the keeper of jail records could have been used to impeach Ms. Harris' trial testimony.

The Michigan Court of Appeals stated that impeachment with the records would have been improper because the possibility that Harris lied about these matters did not bear closely on Petitioner's culpability for stalking Ms. Stephens. The court of appeals also determined that

4

admission of the evidence would not have altered the outcome of the proceedings, because the information was not material to the question of Petitioner's guilt or innocence.

### 1. *Strickland v. Washington*

To prevail on his ineffectiveness claim, Petitioner must demonstrate "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington,* 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687.

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. The defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

### 2. Application

Ms. Harris admitted on direct examination by the prosecutor that she had used marijuana in the past. (Tr. Mar. 28, 2001, at 72-73.) On cross-examination, Ms. Harris conceded that she even used marijuana while she was pregnant with her and Petitioner's child. (*Id*. at 82-84.) In light of Ms. Harris' admissions, defense counsel was not ineffective for failing to produce medical proof of Ms. Harris' substance abuse.

Ms. Harris also admitted that she made three visits to Petitioner while he was in jail. (*Id*. at 107-08; Tr. Mar. 29, 2001, at 75-76.) Although defense counsel claimed to possess a

visitation log showing that Ms. Harris may have visited Petitioner more than three times, Harris testified that her testimony would not change even if records contradicted her testimony. (Tr. Mar. 28, 2001, at 107-08.) She also testified that she would not be embarrassed to say that she saw Petitioner in jail fifteen or twenty times. (Tr. Mar. 29, 2001, at 97-98.) But Harris was not the complainant in this case, and whether she visited Petitioner in jail three or more times had no bearing on whether Petitioner repeatedly called Yvonne Stephens and threatened her or someone in her household. Harris's visits and her use of marijuana and jailhouse visits were collateral issues. Even if defense counsel could have showed that Ms. Harris lied about either topic, impeachment of her testimony on those issues would not have significantly diminished Harris's testimony. Furthermore, the impeachment would not have affected the credibility of Yvonne Stephens' testimony– asserting that Petitioner called Stephens' home repeatedly and threatened to kill them if he was not permitted to see his son– at all. Thus, defense counsel's failure to present a records keeper to substantiate the jail visits and failure to produce medical proof of Harris's marijuana use did not prejudice the defense and does not amount to deficient performance. The state court's conclusion that Petitioner was not deprived of effective assistance of counsel did not amount to an unreasonable application of *Strickland*.

**B. Denial of a Continuance**

Petitioner next argues that the trial court's refusal to grant him a continuance to secure the keeper of the jail visitation log deprived him of his right to a fair trial and to present a defense. The Michigan Court of Appeals rejected this claim on the ground that the records were inadmissible to impeach Ms. Harris and, therefore, Petitioner was not prejudiced by the trial court's decision.

### 1. Continuances and the Right to Defend

A defendant's right to due process in a criminal trial is, in essence, the right to defend against the State's charges. *Chambers v. Mississippi,* 410 U.S. 284, 294 (1973). "Few rights are more fundamental than that of an accused to present witnesses in his own defense." *Taylor v. Illinois*, 484 U.S. 400, 408 (1988). However,

> [t]he matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence. . . . There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.

*Ungar v. Sarafite*, 376 U.S. 575, 589 (1964).

> "When a denial of a continuance forms a basis of a petition for a writ of habeas corpus, not only must there have been an abuse of discretion but it must have been so arbitrary and fundamentally unfair that it violates constitutional principles of due process." *Brown v. O'Dea,* 187 F.3d 572, 580 (6th Cir. 1999) (quoting *Bennett* [*v. Scroggy*, 793 F.2d 772, 774) (6th Cir. 1986)]. To warrant habeas relief, "[t]here must also be some showing that granting the continuance would have furthered the court's attempt to secure a just determination of the cause." *Bennett,* 793 F.2d at 775. [The Sixth Circuit has] considered the following factors in determining whether an accused was deprived of his right to due process by a denial of a motion for a continuance: "the diligence of the defense in interviewing witnesses and procuring their presence, the probability of procuring their testimony within a reasonable time, the specificity with which the defense is able to describe their expected knowledge or testimony, the degree to which such testimony is expected to be favorable to the accused, and the unique or cumulative nature of the testimony." *Id.* at 774 (quoting *Hicks v. Wainwright,* 633 F.2d 1146, 1149 (5th Cir. 1981)) (internal quotation marks omitted).

*Mackey v. Dutton*, 217 F.3d 399, 408 (6th Cir. 2000); *see also Broom v. Mitchell*, 441 F.3d 392, 414-415 (6th Cir. 2006) (explaining that the denial of a motion for continuance amounts to a constitutional violation only if there is an unreasonable and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay and the defense is actually

7

prejudiced by the denial of the continuance), *cert. denied*, __ U.S. __ , 127 S. Ct. 1376 (2007).

### 2. Application

Defense counsel did not attempt to subpoena the keeper of jail visitation records until after Petitioner's trial commenced defense counsel claimed that the records did not become an issue until Kimberly Harris testified that she visited Petitioner only three times, the record keeper's testimony would have had questionable value to the defense. At best, the evidence would have shown that Kimberly Harris was lying or mistaken when she stated that she visited Petitioner three times. However, as previously noted, Harris was not the complainant in this case, and whether she visited Petitioner in jail three or more times had no bearing on whether Petitioner repeatedly called Yvonne Stephens and threatened her or someone in her household. Furthermore, defense counsel was permitted to question Ms. Harris about specific dates when she supposedly visited Petitioner in jail. Therefore, Petitioner was allowed to test the veracity of Ms. Harris. She could not say for sure whether she had been at the jail on those dates (Tr. Mar. 29, 2001, at 76-80), and she claimed that she would not be embarrassed to admit that she saw Petitioner fifteen or twenty times.

The Court concludes that Petitioner was not denied his right to present a defense and that he was not prejudiced by the trial court's denial of a continuance. The state appellate court's rejection of Petitioner's claim was not contrary to, or an unreasonable application of, *Ungar v. Sarafite* or *Chambers v. Mississippi*.

### C. The Prosecutor's Conduct

Petitioner alleges next that he was denied a fair trial by the prosecutor's appeal to the jurors' sense of civic duty and fear of crime. Petitioner also alleges that the prosecutor

8

denigrated the defense. Petitioner has not identified the comments in dispute or cited to the record. However, in his state appellate court brief, he challenged the prosecutor's remark that aggravated stalking "happens a lot more than we think" (Tr. Mar. 27, 2001, at 74) and the comment that the defense was "making up and mischaracterizing testimony" (Tr. Mar. 29, 2001, at 142). The Michigan Court of Appeals stated that the comments were proper.[1]

### 1. Supreme Court Decisions on Prosecutorial Misconduct

To prevail on a claim of prosecutorial misconduct, a petitioner must demonstrate that the prosecutor's conduct violated a specific constitutional right or infected the trial with such unfairness as to make the resulting conviction a denial of due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). It is not enough to show that the prosecutor's conduct or remarks were undesirable or even universally condemned. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). On habeas review, the complained-of conduct must be so egregious as to render the entire trial fundamentally unfair. *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (quoting *Cook v. Bordenkircher*, 602 F.2d 117, 119 (6th Cir. 1979)). "In order to constitute the denial of a fair trial, prosecutorial misconduct must be so pronounced and persistent that it permeates the entire atmosphere of the trial or so gross as probably to prejudice the defendant." *Id*. (citations and quotation marks omitted). "[S]tate courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line

---

[1] Respondent asserts that Petitioner's claim is procedurally defaulted because he did not raise the issue in the trial court. Procedural default is not a jurisdictional bar to review of a claim, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), *cert. denied*, __ U.S. __, 126 S. Ct. 1032 (2006); *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)), and the Court finds it more efficient to address the merits of Petitioner's claim than to analyze whether Petitioner procedurally defaulted the claim. Consequently, the Court proceed with an analysis of the claim.

drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley,* 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly*, 416 U.S. at 645), *cert. denied*, __ U.S. __, 127 S. Ct. 2977 (2007). Moreover,

> [i]n determining whether prosecutorial misconduct mandates habeas relief, [courts] apply the harmless error standard. *Pritchett v. Pitcher,* 117 F.3d 959, 964 (6th Cir. 1997). An error is found to be harmless unless it "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 638 (1993).

*Bates v. Bell*, 402 F.3d 635, 641 (6th Cir. 2005), *cert. denied*, __ U.S. __, 126 S. Ct. 163 (2005).

### 2. Application

Prosecutors may not make irrelevant statements designed to arouse the jury's passions or prejudice by appealing to the jurors' national or community interests. *Viereck v. United States*, 318 U.S. 236, 247-48 (1943); *United States v. Emuegbunam*, 268 F.3d 377, 404 (6th Cir. 2001). However, the prosecutor's remark that aggravated stalking "happens a lot more than we think" was not an appeal to the prospective jurors' passions or community interest. The disputed remark occurred during *voir dire*, and it preceded questions regarding whether anyone had been a victim of stalking or knew somebody who was a victim of stalking. The context of the remark indicates that the prosecutor was attempting to determine whether the prospective jurors were biased due to some prior experience with stalking.

The other disputed remark, that defense counsel was making up or mischaracterizing the testimony, occurred during the prosecutor's rebuttal argument. Although prosecutors may not "make unfounded and inflammatory attacks on the opposing advocate," *United States v. Young*, 470 U.S. 1, 9 (1985). Prosecutors ordinarily are "entitled to wide latitude in rebuttal argument and may fairly respond to arguments made by defense counsel." *Angel v. Overberg,* 682 F.2d

10

605, 607-08 (6th Cir. 1982). In the present case, the prosecutor was responding to defense counsel's closing argument. Furthermore, the prosecutor acknowledged that it was the jurors' duty to decide which comments were consistent with the evidence and which comments were inconsistent. (Tr. Mar. 29, 2001, at 142.) The trial court also instructed the jurors that the lawyers' arguments were not evidence and that the jurors had to decide the facts based on the admissible evidence. (*Id*. at 147 and 149-50.)

Even though the prosecutor's remarks were deliberately made, they were not fundamentally unfair and could not have misled the jury or prejudiced Petitioner, given the overwhelming evidence against Petitioner. Therefore, the state court's rejection of Petitioner's claim did not result in a decision that was contrary to, or an unreasonable application of, Supreme Court precedent.

**D. Evidence of Other Acts**

Petitioner's fourth and final claim alleges that the trial court's decision to admit evidence of other "bad acts" deprived him of a fair trial. The evidence in dispute consists of Kimberly Harris' testimony that Petitioner assaulted her seven months after the incidents leading to his arrest on the stalking charge. Ms. Harris testified that Petitioner assaulted her after he overheard her talking to another man on the telephone. Petitioner told her that he was going to kill both of them. Then he began to beat her. The beating resulted in a damaged ear drum, for which she sought medical help, and a bruised and swollen face. A charge of felonious assault was pending against Petitioner at the time of his trial on the aggravated stalking charge. (Tr. Mar. 28, 2001, at 78-82 and 133-35.)

The trial court admitted evidence of the felonious assault on the ground that the evidence

11

was relevant to show Petitioner's intent and the absence of mistake in the stalking case. The trial court stated that the probative effect of the evidence was not outweighed by its prejudicial effect. (Tr. Mar. 27, 2001, at 10-11.) The Michigan Court of Appeals agreed that the assault was probative of Petitioner's intent and the absence of mistake regarding the calls and statements made to Yvonne Stephens.

"Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (citing *Estelle v. McGuire*, 502 U.S. 62, 69-70 (1991)). Furthermore,

> [t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence. . . . While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms.

*Bugh v. Mitchell*, 329 F.3d 496, 512-13 (6th Cir. 2003). Because there is no Supreme Court decision holding that the admission of similar acts evidence violates the Constitution, the state appellate court's conclusion that the evidence in dispute was admissible cannot be deemed "contrary to" Supreme Court precedent under 28 U.S.C. § 2254(d). *Id*. at 513.

Even assuming that Petitioner's claim is theoretically cognizable on habeas review, given the facts in the present case, Petitioner cannot prevail. An element of aggravated stalking is that the defendant made a credible threat against the complainant, her family, or someone living in her household. Mich. Comp. Laws § 750.411i(2)(c). The prosecutor maintained that this element was satisfied because Petitioner made a credible threat against the complainant or her

12

family. (Tr. Mar. 29, 2001, at 121.) Defense counsel, on the other hand, argued that the case was really about the custody of the child and that, even if Petitioner said, "I'm going to kill you," the remark was a slip of the tongue, something he did not mean, and the result of his anger and frustration from not being able to see his child. (Tr. Mar. 27, 2001, at 119-20; Tr. Mar. 29, 2001, at 130-34.) It is readily apparent, examining the relevance of the evidence in question, that Petitioner's assault on Kimberly Harris tended to make his threats to kill Ms. Harris and Yvonne Stephens more credible and not a mistake or mere slip of the tongue. Therefore, the "bad acts" evidence was probative of an element of the charged offense. Accordingly, admission of the evidence did not render the trial fundamentally unfair.

## IV. Certificate of Appealability

Pursuant to 28 U.S.C. § 2253, before a Petitioner may appeal a decision of this Court, the Court must determine if Petitioner is entitled to a COA. 28 U.S.C. § 2253(c)(1)(a); Fed. R.App. P. 22(b). The Court must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b). A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880 at 893, n. 4 (1983)).

In applying the above standard, a district court may not conduct a full merits review, but

13

must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Miller-El v. Cockrell*, 537 U.S. 322, 336-37 (2003). "When a habeas applicant seeks permission to initiate appellate review of the dismissal of his petition," a federal court should "limit its examination to a threshold inquiry into the underlying merit of his claims." *Id*. at 323.

After conducting the required inquiry, and for the reasons stated in the order above, the Court finds that Petitioner has not made a substantial showing of the denial of a constitutional right with respect to any of the claims presented. *See* 28 U.S.C. § 2253(c)(2). Petitioner should not receive any encouragement to proceed further. *Slack*, 529 U.S. at 484. Because the Court can discern no good faith basis for an appeal, *see Miller-El*, 537 U.S. at 338, any appeal would be frivolous. The Court will therefore deny a certificate of appealability.

**IV. Conclusion**

The state appellate court's rejection of Petitioner's claims did not result in a decision that was contrary to, or an unreasonable application of, Supreme Court precedent.

**ACCORDINGLY, IT IS HEREBY ORDERED** and adjudged that Petitioner's application for a writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**SO ORDERED**.


Dated:   July 30, 2007                                         s/Paul V. Gadola
                                                               HONORABLE PAUL V. GADOLA
                                                               UNITED STATES DISTRICT JUDGE

Certificate of Service

I hereby certify that on ___July 30, 2007___ , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:
_____Raina I. Korbakis_____, and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: _____Keith Boyd_____.

                                         s/Ruth A. Brissaud
                                         Ruth A. Brissaud, Case Manager
                                         (810) 341-7845